**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| ISAAC GARDNER, ) | |
| Petitioner, ) | |
| v. ) | Case No. CIV-07-1329-HE |
| ) | |
| JUSTIN JONES,[1] ) | |
| ) | |
| Respondent. ) | |

**REPORT AND RECOMMENDATION**

Petitioner, Isaac Gardner, appearing *pro se*, has filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 challenging his state court conviction. In addition to the petition, two motions are pending before this Court. First, Petitioner requests an evidentiary hearing to determine whether there was sufficient evidence to support his conviction [Doc. #9] (Motion for Evidentiary Hearing). Second, Petitioner has filed a Motion to Set Aside Conviction and Sentence [Doc. #31] (Motion to Set Aside). This Motion also challenges the sufficiency of the evidence. It is recommended that the petition and both pending motions be denied.

**I.    Background and Case History**

Petitioner was arrested and charged with one count of Forcible Oral Sodomy and one count of Attempted Sexual Battery following two separate incidents at two different assisted

---

[1]Petitioner named the State of Oklahoma as Respondent. As Petitioner is in custody pursuant to the judgment of a State court, the proper respondent is Justin Jones, the State officer who currently has custody of Petitioner. Justin Jones should be substituted as the Respondent in this case.

living facilities. He was tried on these two charges in the Oklahoma County District Court on October 3-5, 2005.

Carl Meyers is a thirty-six-year-old man who lives at the Reliant Living Center because he has Prader-Willi syndrome. Mr. Meyers testified that on January 24, 2004, he was playing cards in the conference room when Petitioner, posing as a nurse, asked Mr. Meyers to accompany him to the men's restroom at the back of the conference room. Once they were in the restroom, Petitioner locked the door, pulled down Mr. Meyers' pants and began to touch and suck Mr. Meyers' penis and testicles. When Mr. Meyers began yelling for help, Petitioner unlocked the bathroom door and let Mr. Meyers leave. Petitioner then left the Reliant Living Center. Mr. Meyers told the nurses and staff what had happened, and the police were called. Mr. Meyers described Petitioner and reported the crime. The incident on January 24, 2004, is the basis for the charge against Petitioner in Count I of the Information.

Count II is based on an incident that happened four days later at the Manor Care Nursing Home. Dr. Sharon Strain is a fifty-six-year-old former veterinarian and resident there. Dr. Strain testified that she is confined to her bed or a wheel chair as the result of three strokes, and as a result, she must wear adult diapers. Dr. Strain testified that on January 28, 2004, a man came into her room and started talking to her. Before he left, the man looked around as if to make sure no one else was in the room, and then he lifted up the bed sheet which was covering Dr. Strain from the waist down. Alarmed, Dr. Strain began trying to

access the call button with which she summons staff members. The man left before a staff member responded.

Elizabeth Oridota, a nurse who works at Manor Care Nursing Home, testified that she had seen Petitioner inside the nursing home on several occasions including on the Saturday before Dr. Strain's encounter with Petitioner. Ms. Oridota also saw Petitioner walking through the building just shortly before Dr. Strain reported the incident forming the basis of Count II. On the following Saturday, January 31, 2004, Ms. Oridota again saw Petitioner in the building and recognized him as the man she had seen three days before. Ms. Oridota instructed another employee to call the police, and Petitioner was detained until the police arrived and arrested him.

After Petitioner's arrest, Detective Kim Davis, the police officer assigned to investigate both nursing home incidents, conducted several videotaped interviews of Petitioner who admitted being in Dr. Strain's room but denied any impropriety. He told Detective Davis that he was a traveling jewelry salesman and visited Manor Care Nursing Home to use the restroom and get a Coke. He explained the incident in Dr. Strain's room by stating that he had dropped a ring that fell under Dr. Strain's sheet and that he lifted the sheet to get the ring. Petitioner also stated, however, that he had a urine fetish and that he visited nursing homes because female residents had "vaginas moist with urine." He also stated that he would not touch a female nursing home resident if the resident was wearing a diaper and that he would peek to see if there was a diaper. If not, Petitioner stated that he would touch the "pee hole" which would cause him to urinate in his pants and have a partial orgasm.

3

Detective Davis's testimony included a recitation of the admissions Petitioner had made, and a redacted version of one of the videotapes was played for the jury over Petitioner's objections.

Petitioner was convicted in Oklahoma County District Court, Case No. CF-2004-891 of Forcible Oral Sodomy (Count I). He was acquitted of Attempted Sexual Battery (Count II). The trial court sentenced Petitioner to 20 years' imprisonment, the sentence recommended by the jury.

Petitioner appealed his conviction to the Oklahoma Court of Criminal Appeals (OCCA) raising three grounds for relief: (1) the videotape evidence of Petitioner's interview with Detective Davis constitutes evidence of other crimes or bad acts and deprived him of a fair trial; (2) the trial court failed to instruct the jury on Oklahoma's 85% rule; and (3) the punishment imposed is excessive. *See* Response to Petition for Writ of Habeas Corpus [Doc. #14] (Response) Exhibit 1, Original Brief for and on Behalf of Isaac Gardner. The OCCA affirmed the conviction but modified Petitioner's twenty-year sentence to fifteen years based on Petitioner's second ground for relief. The OCCA stated that the sentence modifications mooted Petitioner's contention that his sentence was excessive. As to Petitioner's challenge to the admissibility of the redacted video tape of his interview with Detective Davis, the OCCA held that under state law, the evidence was properly admitted as relevant to the issue of intent, an element of the crime charged in Count II. The OCCA also stated that Petitioner could not show that he was prejudiced by introduction of the videotape because he had not

been convicted of Attempted Sexual Battery as charged in Count II. *See* Response Exhibit 3, OCCA Summary Opinion.

Petitioner then filed an application for post-conviction relief raising the same three grounds for relief addressed on direct appeal. According to the Order Affirming Denial of Post-Conviction Relief, Petitioner also challenged the performance of his trial counsel as constitutionally ineffective. On November 14, 2007, the OCCA affirmed the district court's denial of post-conviction relief. *See* Response, Exhibit 5, OCCA Order Affirming Denial of Post-Conviction Relief.

On November 27, 2007, Petitioner filed this action for federal habeas corpus relief raising the same three grounds presented to the OCCA on direct appeal: (1) the introduction of evidence of other crimes or bad acts deprived him of a fair trial; (2) the trial court's failure to instruct the jury on Oklahoma's 85% Rule prejudiced him at sentencing; and (3) the punishment imposed is excessive.

## II.    **Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) standards of review apply to the grounds for relief raised by Petitioner because all grounds raised in the Petition were adjudicated on the merits by the state courts. *See Turrentine v. Mullin*, 390 F.3d 1181, 1188 (10th Cir. 2004). Under AEDPA, this Court may grant Petitioner habeas relief only if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Under this standard,

judicial review is directed to the result of the state appellate court's decision, not its reasoning. *See Gipson v. Jordan*, 376 F.3d 1193, 1197 (10th Cir. 2004) ("[W]e defer to the [state court's] decision unless we conclude that its result – not its rationale – is 'legally or factually unreasonable'").

A state court decision is "contrary to" clearly established federal law for purposes of § 2254 if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the result reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). It is not enough that the state court decided an issue contrary to a lower federal court's conception of how the rule should be applied; the state court decision must be "diametrically different," "opposite in character or nature," or "mutually opposed" to the Supreme Court decision itself. *Id.* at 406.

A state court decision involves an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "AEDPA's conception of objective unreasonableness lies 'somewhere between *clearly erroneous* and unreasonable to all reasonable jurists.'" *House v. Hatch*, 527 F.3d 1010, 1019 (10th Cir. 2008) (*quoting Maynard v. Boone*, 468 F.3d 665, 670 (10th Cir. 2006)). "Thus, 'only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254.'" *House* at 1019 (*quoting Maynard*, 468 F.3d at 671)).

**III.    Analysis**

    **A.    Ground One – Introduction of Evidence of Other Crimes or Bad Acts**

Petitioner challenges the trial court's admission of the redacted videotaped interview conducted by Detective Davis.[2] Petitioner contends that the evidence constituted other crimes and bad acts and was more prejudicial than probative.[3] The OCCA held that the trial court properly admitted the videotaped interview to show the intent necessary for a conviction on Count II. The OCCA also stated that it could "discern no prejudice" as Petitioner was acquitted of the charge of Attempted Sexual Battery in Count II. Response Exhibit 3 at 2.

When no particular constitutional guarantees are implicated, evidentiary objections, such as the objection in Ground One, are based on questions of state law and are cognizable in a federal habeas action only if the alleged error was "so grossly prejudicial [that it] fatally infected the trial and denied the fundamental fairness that is the essence of due process." *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (quotation omitted). *See also Smallwood v. Gibson*, 191 F.3d 1257, 1277 (10th Cir. 1999) ("On habeas review, we will not disturb

---

[2]Comments Petitioner made about a previous burglary conviction were redacted as well as statements that Petitioner had allegedly had consensual sex with another nursing home patient. Petitioner's comments pertaining to prior incidents similar to Petitioner's encounter with Dr. Strain were not redacted.

[3]Under Oklahoma law, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Okla. Stat. tit. 12, § 2404. Additionally, relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" Okla. Stat. tit. 12, § 2403.

evidentiary findings regarding the admission of prior offenses, crimes, or bad acts evidence unless the prejudice flowing from such evidence is so great as to constitute a denial of federal constitutional rights by rendering the trial fundamentally unfair.").

Petitioner's conviction on Count I, Forcible Oral Sodomy, was based on the incident involving Mr. Meyers. But the statements Petitioner made to Detective Davis described his unusual sexual proclivities which led to his visiting women residents in nursing homes and performing or attempting to perform sexual acts similar to those described in Count II, Attempted Sexual Battery, and were admitted for the purpose of showing the element of intent for that charge. As the OCCA pointed out, Petitioner was not convicted of the charge of Attempted Sexual Battery in Count II. Further, there is no indication that Petitioner's statements to Detective Davis impacted the jury's verdict as to Count I. The jury's verdict was fully supported by the testimony of Mr. Meyers, which was more than sufficient standing alone to establish Petitioner's guilt and support the sentence he received. The OCCA's resolution of Petitioner's evidentiary objection was neither contrary to nor an unreasonable application of Supreme Court precedent. The admission of the videotaped interview did not render Petitioner's trial fundamentally unfair, and Petitioner is not entitled to relief on this ground.

**B.     Ground Two – Failure to Instruct Jury on Oklahoma's 85% Rule**

Petitioner's second ground for relief is based on his contention that he was prejudiced in his sentencing by the trial court's failure to instruct the jury regarding Oklahoma's "85%

Rule." Petition at 6. Two state statutes, Okla. Stat. tit. 21, §§ 12.1 and 13.1(15) (Supp. 2000)), comprise the "85% Rule." Section 12.1 states:

> A person committing a felony offense listed in [Section 13.1] on or after March 1, 2000, and convicted of the offense shall serve not less than eighty-five percent (85%) of the sentence of imprisonment imposed within the Department of Corrections.

Okla. Stat. tit. 21, § 12.1 (Supp. 2000). Forcible sodomy is one of the listed crimes. *See* Okla. Stat. tit. 21, § 13.1(15).

Jury instructions in state criminal cases are also matters of state law for which federal habeas relief is unavailable unless the challenged instruction (or lack of instruction) violates due process. *See Estelle v. McGuire,* 502 U.S. 62, 72 (1991). The Supreme Court has considered when a state court must allow a defendant to inform the jury about parole eligibility. In *Simmons v. South Carolina*, 512 U.S. 154 (1994), the Court held that where future dangerousness is an issue, a defendant facing capital punishment or life without possibility of parole is entitled to inform the jury that he would be ineligible for parole if the life sentence were imposed.

The holding in *Simmons* does not mandate the instruction sought by Petitioner in the instant case. Nevertheless, in *Anderson v. State*, 130 P.3d 273, 282 (Okla. Crim. App. 2006), the OCCA held that, as a matter of state law, jurors should be instructed on the statutory limitations on parole eligibility set forth in Okla. Stat. tit. 21, §§ 12. 1. and 13.1. *Anderson* was issued after Petitioner was convicted and sentenced. Nevertheless, the OCCA applied *Anderson* to Petitioner's case and reduced Petitioner's original twenty-year sentence to a

9

term of fifteen years' imprisonment.  The OCCA's application of its decision in *Anderson* and its modification of Petitioner's sentence is neither contrary to nor an unreasonable application of Supreme Court law.  Petitioner is not entitled to further relief from this Court.

### C.     Ground Three – Excessive Sentence

Petitioner contends that the sentence he received is excessive.  The OCCA deemed this issue moot because it modified Petitioner's sentence.  In his brief before the OCCA on direct appeal, Petitioner acknowledged that the twenty-year sentence originally imposed is within the range of punishment under Oklahoma law.  *See* Response Exhibit 1 at 27.

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a narrow proportionality principle that applies to noncapital sentences." *Ewing v. California*, 538 U.S. 11, 20 (2003) (citation and internal quotations omitted).  The proportionality principle, however, "reserves a constitutional violation for only the extraordinary case." *Lockyer v. Andrade*, 538 U.S. 63, 77 (2003).  *See also United States v. Gillespie*, 452 F.3d 1183, 1190-1191 (10th Cir. 2006) (summarizing Supreme Court precedent on the proportionality principle and noting that "the [Supreme] Court has only twice invalidated a sentence under the Eighth Amendment: once in 1910, when the defendant was sentenced to fifteen years in chains and hard labor for falsifying a public document; and most recently in 1983, when the defendant was sentenced to life without parole after committing six nonviolent felonies including writing a bad $100-dollar check") (citations omitted).  As the Tenth Circuit has stated, courts "are reluctant to interfere with the legislative determination of an appropriate sentence range."  *Hawkins v. Hargett*, 200 F.3d 1279, 1285 (10th Cir. 1999).

Application of the narrow proportionality principle has, therefore, been reserved to the truly extraordinary case involving a sentence grossly disproportionate to the crime of conviction. *See Hawkins v. Hargett*, 200 F.3d 1279, 1282 (10th Cir. 1999). *See also United States v. Gillespie*, 452 F.3d 1183, 1190 (10th Cir. 2006) (aggregate sentence of imprisonment of 468 months was not grossly disproportionate to the severity of the crimes under narrow proportionality principle that applies to noncapital sentences), *compare Harmelin v. Michigan*, 501 U.S. 957, 994 (1991) (holding that a sentence of life without parole is not disproportionate to a first-time offender's conviction of possession of cocaine). Petitioner's sentence of imprisonment is within the statutory range of punishment for forcible oral sodomy and is not grossly disproportionate to the crime he committed. Petitioner fails to present the extraordinary case needed to establish a violation of his Eighth Amendment rights.

**V.     Petitioner's Motions**

    **A.     Motion for Evidentiary Hearing**

Petitioner has filed a document entitled, "Requesting Evidentary [sic] Hearing" [Doc. #9]. Although the content of this document is less than clear, it appears that Petitioner does seek an evidentiary hearing based on his contention that evidence against him was the result of a "scheme" to "manufacture false allegations against the defendant" resulting in the State's having "failed to prove beyond a reasonable doubt of the essential elements of the crime."

"AEDPA strictly limits a federal court's ability . . . to grant evidentiary hearings." *Hammon v. Ward*, 466 F.3d 919, 925 (10th Cir. 2006) (citations omitted). Section 2254 provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
>
> (A) the claim relies on-
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2)(A) & (B); *see also Bryan v. Mullin*, 335 F.3d 1207, 1214 (10th Cir. 2003) (en banc). Petitioner does not rely on a new rule of constitutional law, nor has he presented evidence to suggest that the factual predicate for his newly asserted insufficiency of the evidence claim could not have been discovered through due diligence. Moreover, Petitioner has not demonstrated that, but for constitutional error, no reasonable factfinder would have found him guilty. Accordingly, it is recommended that this motion be denied.

**B.    Motion to Set Aside Conviction and Sentence**

It appears that Petitioner's Motion to Set Aside Conviction and Sentence [Doc. #31] is also a belated attempt to challenge the sufficiency of the evidence upon which Petitioner

was convicted. Petitioner states that he is "actually innocence [sic] of the subject offense [and] that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt [and] that Petitioner did not committ [sic] the crime." Motion to Set Aside at 1. This new ground for relief is preceded by Petitioner's statement that he "perhaps made some terrible choices," but that he is "still capable to rise above [his] mistakes" and that he is "just often overlooked because of the gravity of [his] actions and consequences that [he] must face." This statement does not present a convincing argument that Petitioner is "actually innocent."

If this Motion is construed as an attempt to amend the petition to assert a new ground for habeas relief based on insufficiency of the evidence, the motion should be denied. Petitioner has never presented this issue to the state courts and, therefore, has not exhausted his state court remedies. Permitting Petitioner to add this claim would create a mixed petition subject to dismissal on that ground. *See Rose v. Lundy*, 455 U.S. 509 (1982)**.** Further, although the claim is technically unexhausted, it is beyond dispute that, were Petitioner to attempt to now present the claim to the Oklahoma state courts in a second application for post-conviction relief, the claim would be procedurally barred by Okla. Stat. tit. 22, § 1086 (providing that all grounds for relief which are actually known or which should have been known through the exercise of due diligence must be brought in an initial application for post-conviction relief). Thus, the claim is subject to an "anticipatory procedural bar." *See Cummings v. Sirmons*, 506 F.3d 1211, 1223 (10th Cir. 2007). *See also Moore v. Schoeman*, 288 F.3d 1231, 1233 n. 3 (10th Cir. 2002) ("'Anticipatory procedural bar' occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally

barred under state law if the petitioner returned to state court to exhaust it.") (internal citation and quotation omitted).

For these reasons, Petitioner's Motion should be denied.

## RECOMMENDATION

It is recommended that the Petition for Writ of Habeas Corpus [Doc. #1] be denied. It is further recommended that Petitioner's Motion for Evidentiary Hearing [Doc. #9] and his Motion to Set Aside Conviction and Sentence [Doc. #31] be denied.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objections must be filed with the Clerk of the District Court by August __14th__, 2008. *See* Local Civil Rule 72.1. Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all matters referred by the District Judge in this case and terminates the referral.

DATED this __25th__ day of July, 2008.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE